Slip Op. 18-60

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AN GIANG FISHERIES IMPORT AND EXPORT JOINT STOCK COMPANY ET AL.,** | |
| **Plaintiffs and Consolidated Plaintiffs,** | |
| **and** | |
| **VIETNAM ASSOCIATION OF SEAFOOD EXPORTERS AND PRODUCERS ET AL.,** | |
| **Plaintiff-Intervenor and Consolidated Plaintiff-Intervenors,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Consol. Court No. 14-00109** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **CATFISH FARMERS OF AMERICA ET AL.,** | |
| **Defendant-Intervenors and Consolidated Defendant-Intervenors.** | |

## OPINION

[Sustaining the U.S. Department of Commerce's second remand determination in the ninth antidumping duty administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam.]

Dated: May 24, 2018

Matthew Jon McConkey, Mayer Brown LLP, of Washington, DC, argued for Plaintiffs, Consolidated Plaintiff-Intervenors, and Consolidated Defendant-Intervenors An Giang Fisheries Import and Export Joint Stock Company; Cuu Long Fish Joint Stock Company; Hiep Thanh Seafood Joint Stock Company; NTSF Seafoods Joint Stock Company; QVD Food Company Ltd.; Southern Fishery Industries Company, Ltd.; Vinh Hoan Corporation;

Asia Commerce Fisheries Joint Stock Company; and International Development and Investment Corporation.

<u>Jonathan Mario Zielinski</u> and <u>Heather Kay Pinnock</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC, argued for Consolidated Plaintiffs, Defendant-Intervenors, and Consolidated Defendant-Intervenors Catfish Farmers of America; America's Catch; Alabama Catfish Inc. d/b/a Harvest Select Catfish, Inc.; Heartland Catfish Company; Magnolia Processing, Inc. d/b/a Pride of the Pond; and Simmons Farm Raised Catfish, Inc.  On the brief was <u>Nazakhtar Nikakhtar</u>.

<u>John Joseph Kenkel</u>, deKieffer & Horgan PLLC, of Washington, DC, for Consolidated Plaintiff Binh An Seafood Joint Stock Company.

<u>Jordan Charles Kahn</u>, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, argued for Consolidated Plaintiff, Plaintiff-Intervenor, Consolidated Plaintiff-Intervenor, and Consolidated Defendant-Intervenor Vietnam Association of Seafood Exporters and Producers.

<u>Kara Marie Westercamp</u>, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, of Washington, DC, argued for Defendant.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of Counsel on the brief was <u>David W. Richardson</u>, Senior Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.  Also appearing as Of Counsel was <u>Kristen McCannon</u>, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge:   Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") second remand determination in the ninth antidumping duty ("ADD") administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"), filed pursuant to the court's order in <u>An Giang Fisheries Import and Export Joint Stock Company v. United States</u>, 41 CIT __, 236 F. Supp. 3d 1352 (2017).  <u>See</u> Final Results of Redetermination Pursuant to <u>An Giang Fisheries Import and Export Joint Stock Company et al.</u>, Consol. Court No. 14-00109, Slip Op. 17-00082 (July 10, 2017), Sept. 22, 2017, ECF No. 167 ("<u>Second Remand Results</u>"); <u>see also</u> <u>An Giang</u>

<u>Fisheries Import and Export Joint Stock Company v. United States</u>, 41 CIT __, __, 236 F. Supp. 3d 1352, 1361 (2017) ("<u>An Giang II</u>").

The court remanded Commerce's final determination and first remand determination on the issue of calculating a surrogate value for respondent Vinh Hoan Corporation's ("Vinh Hoan") fish oil byproduct in this review.  <u>See An Giang II</u>, 41 CIT at __, 236 F. Supp. 3d at 1358–61; <u>An Giang Fisheries Import and Export Joint Stock Company v. United States</u>, 40 CIT __, __, 179 F. Supp. 3d 1256, 1285 (2016) ("<u>An Giang I</u>"); <u>Certain Frozen Fish Fillets From [Vietnam]</u>, 79 Fed. Reg. 19,053 (Dep't Commerce Apr. 7, 2014) (final results of ADD administrative review and new shipper review; 2011–2012), <u>as amended</u> 79 Fed. Reg. 37,714 (Dep't Commerce July 2, 2014) and accompanying Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Mem. for the Final Results of the Ninth Admin. Review and Aligned New Shipper Review, (Mar. 28, 2014), ECF No. 29-3 ("Final Decision Memo").  The court ordered that, on second remand, Commerce must further explain or reconsider its decision to construct a value for respondent Vinh Hoan's fish oil byproduct rather than to select the best surrogate value for fish oil from the values placed on the record.  <u>An Giang II</u>, 41 CIT at __, 236 F. Supp. 3d at 1358–61.

On second remand, Commerce further explains its determination to construct a surrogate value price for Vinh Hoan's fish oil, and provides further explanation as to why that method is reasonable based on the record and why the resulting value constitutes the best available information for valuing the fish oil byproduct.  Commerce has complied with the court's remand order in <u>An Giang II</u>, Commerce's explanation is reasonable, and

its findings are supported by substantial evidence.  Accordingly, the <u>Second Remand</u>
<u>Results</u> are sustained.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the two

prior opinions, <u>see</u> <u>An Giang II</u>, 41 CIT at __, 236 F. Supp. 3d at 1354–56; <u>An Giang I</u>, 40

CIT at __, 179 F. Supp. 3d at 1261–62, and here recounts the facts relevant to the court's

review of the <u>Second Remand Results</u>.

In the final determination, Commerce selected Indonesian import data under HTS

1504.20.9000 as the best available information to value Vinh Hoan's fish oil byproduct in

this review.  <u>See</u> Final Decision Memo at 78–86.  Commerce explained that it had

concerns that the HTS category was too broad because it included values for both refined

and unrefined fish oil, and Vinh Hoan's byproduct is solely unrefined fish oil.  <u>Id.</u> at 82.

Commerce explained that it "finds that the value derived from the Indonesian GTA import

data under HTS 1504.20.9000 is unrepresentative of Vinh Hoan's 'unrefined' fish oil

because this value likely reflects 'refined' fish oil prices."  <u>Id.</u> at 83.  To address its concern

about overbreadth, Commerce "capped" the HTS value at a value for unrefined fish oil,

calculated using Vinh Hoan's factor of production ("FOP") data, as it had in the eighth

review.  <u>See id.</u> at 81–83.  Commerce explained that it was "capping" the Indonesian

import data value for HTS 1504.20.9000 at a value representative of Vinh Hoan's fish oil,

derived from a build-up of FOPs used to produce unrefined fish oil.  <u>See id.</u> at 82–82.

Commerce explained that such a cap was warranted because the import value was

greater than the value for whole fish, the main input, and it would be "unreasonable that

the [surrogate value] for Vinh Hoan's fish oil by-product derived from whole fish would be

higher than its main input (i.e., whole fish)."  Id. at 82.

In An Giang I, the court determined that what Commerce referred to as a "cap" of

the Indonesian data was "in fact a rejection of the import data in favor of a [constructed

value]."  An Giang I, 40 CIT at __, 179 F. Supp. 3d at 1281–82.  The court stated that,

until Commerce acknowledged that it was actually constructing a value rather than

capping a surrogate value from an existing data source, the court could not review

whether Commerce's selection of the Indonesian import data was reasonable because it

was not clear whether and how Commerce actually valued Vinh Hoan's fish oil byproduct

using the Indonesian import data.  Id., 41 CIT at __, 179 F. 3d at 1282–83.  The court

noted that,

> [a]lthough the court cannot say Commerce unreasonably concluded that
> Vinh Hoan's fish oil is unrefined fish oil (a low value-added product),
> Commerce has not explained why it is reasonable to depart from its normal
> methodology of choosing the best [surrogate value] data source to value
> respondents' fish oil byproduct. . . .  Commerce may have good reason to
> go beyond its stated methodology and construct a value instead of choosing
> the best available [surrogate value] data source on the record to value fish
> oil.  If so, Commerce needs to state what it is doing and explain why this
> alternative methodology is reasonable so that the court may review
> Commerce's methodology and determination.

Id. (internal citation omitted).  The court remanded Commerce's determination on this

issue for the agency to clarify its methodology.  See id., 40 CIT at __, __, 179 F. Supp.

3d at 1283, 1285.

On first remand, Commerce continued to refer to its methodology as a "cap."  See

generally Final Results of Redetermination Pursuant to An Giang Fisheries Import and

Export Joint Stock Company et al., v. United States, Consol. Court No. 14-00109, Slip

Op. 16-55 (June 7, 2016) at 13–17, 22–26, Feb. 10, 2017, ECF No. 151-1.  Commerce

again explained that it had "capped" the HTS 1504.20.9000 data at a value for unrefined

fish oil based on Vinh Hoan's own FOP data.  See id. at 14–15.  Commerce again

concluded that the HTS data was not representative of Vinh Hoan's unrefined fish oil

byproduct because the HTS value was significantly higher than the main input and

includes data values for both refined and unrefined fish oil.  See id.  Commerce explained

that, pursuant to its practice, such a cap was appropriate because the HTS data value

was higher than the value of the main input, whole live fish, and a surrogate value priced

above the value of the main input would be unreasonable.  Id. at 14.  Commerce explained

that "the use of the contemporaneous, recently verified FOP data to produce unrefined

fish oil provided by Vinh Hoan, provides a more accurate cap than the [surrogate value]

for live whole fish, improves the accuracy of the Department's dumping calculation, and

represents the best available information."  Id. at 17.

        In An Giang II, the court again determined that Commerce had still not explained,

or even "squarely acknowledged," An Giang II, 41 CIT at __, 236 F. Supp. 3d at 1359,

that it was using a constructed value rather than selecting a surrogate value for fish oil

from the values available on the record.  Id., 41 CIT at __, 236 F. Supp. 3d at 1359–61.

The court explained that, although the agency had determined that Indonesian import

data for HTS 1504.20.9000 constitutes the best available information, "Commerce does

not actually use the import data for fish oil [under HTS 1504.20.9000 as a surrogate

value]," but instead "builds a constructed value for the fish oil using fish oil FOPs and calls

this value a 'cap.'"  Id., 41 CIT at __, 236 F. Supp. 3d at 1359.  The court determined that

Commerce had, without explanation, deviated from its standard practice of choosing "the best existing surrogate value data source for fish oil from the alternative sources" on the record.  See id., 41 CIT at __, 236 F. Supp. 3d at 1358.  The court remanded again for the agency to explain why constructing a value from fish oil FOPs, rather than using alternative available surrogate value data, constitutes the best available information, or reconsider its determination.  Id., 41 CIT at __, 236 F. Supp. 3d at 1360–61.

Commerce issued the Second Remand Results on September 22, 2017.  On second remand, Commerce acknowledged that it constructed a value for the fish oil surrogate value rather than capping a surrogate value already on the record.  Second Remand Results at 11 n.59 ("Based on the Court's ruling, we will no longer refer to the [surrogate value] used to value fish oil as a cap, but instead as a value the Department calculated to yield a more reasonable result.").  Commerce explained that constructing a value based on Vinh Hoan's FOPs provided a more accurate value than any of the other potential surrogate values on record in this review because it was based on "verified information submitted from Vinh Hoan's own books and records," which is specific, reliable, and meets the Department's other selection criteria, while the alternative surrogate values that had been placed on the record did not.  See id. at 13–14.  The agency emphasized that, in this case, building up a value complies with its statutory mandate to calculate the most accurate dumping margins possible based on the record.  Id. at 11.  For these reasons, Commerce explained, it found that the calculated fish oil surrogate value constitutes the best available information on the record of this review.

See id. at 2–14.  Vinh Hoan's margin calculation did not change on second remand.  Id. at 2.

## JURISDICTION AND STANDARD OF REVIEW

The court continues to have jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[1] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of an antidumping duty order.  "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306).

## DISCUSSION

On second remand, Commerce acknowledges that it constructed a value for Vinh Hoan's unrefined fish oil byproduct to be offset in this review.  See Second Remand Results at 11–13.  Plaintiff continues to challenge Commerce's use of that constructed value, and argues that it was unreasonable to set aside the Indonesian import data for HTS 1504.20.9000 because that data is not overbroad and its value is not unreasonably

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

high.  <u>See</u> Pl.'s Comments on the Final Results of Redetermination Pursuant to 2nd Remand at 5–27, Dec. 14, 2017, ECF No. 172 ("Pl.'s Second Remand Comments").  Defendant responds that constructing a value in this case using FOP data reported by Vinh Hoan and verified by Commerce resulted in the most accurate surrogate value available on this record, so it was reasonable for Commerce not to use the Indonesian HTS 1504.20.9000 data.  <u>See</u> Def.'s Resp. Pl.'s Comments on Second Remand Redetermination at 6–18, Feb. 23, 2018, ECF No. 185 ("Def.'s Second Remand Comments").  Defendant emphasizes that Commerce determined that the import data for the Indonesian HTS 1504.20.9000 category would not be a reasonable surrogate value because the import data is not specific to, and thus not representative of the value of, Vinh Hoan's unrefined fish oil.  <u>See</u> <u>id.</u> at 5, 9–12, 19.

In non-market economy cases, Commerce obtains the normal value of the subject merchandise by adding the value of the FOPs used to produce the subject merchandise together with "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses."  19 U.S.C. § 1677b(c)(1).  Commerce offsets that figure with the production costs of any byproducts generated during the production process that the respondent sold.  Commerce values the byproduct offset and other FOPs using "the best available information regarding the values of such factors in a market economy country or countries. . . ."  19 U.S.C. § 1677b(c)(1).  Commerce's methodology for selecting the best available information evaluates data sources based upon their: (1) specificity to the input; (2) tax and import duty exclusivity; (3) contemporaneity with the period of review; (4) representativeness of a broad market average; and (5) public

availability.  See Final Decision Memo at 13; Import Admin., U.S. Dep't Commerce, Non-Market Economy Surrogate Country Selection Process, Policy Bulletin 04.1 (2004), available at http://enforcement.trade.gov/policy/bull04-1.html (last visited May 21, 2018).

Commerce's practice for selecting the best available information to value individual FOPs favors selecting a data source that satisfies the breadth of its selection criteria where possible.  See Final Decision Memo at 13.  Although Commerce has discretion to decide what constitutes the best available information, see QVD Food Co. v. United States, 658 F.3d 1318, 1323 (Fed. Cir. 2011), Commerce must ground its selection of the best available information in the overall purpose of the ADD statute, calculating accurate dumping margins.  See Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (2001); see also Lasko Metal Prods., Inc. v. United States, 43 F.3d 1442, 1443 (Fed. Cir. 1994) ("[T]here is much in the statute that supports the notion that it is Commerce's duty to determine margins as accurately as possible, and to use the best information available to it in doing so."); Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

Here, Commerce deviates from its standard methodology of selecting an already-established value from sources placed on the record.  Commerce explains that this decision is, however, not a deviation from its overall practice "to follow [its] statutory mandate to select [surrogate values] from the best available information," which Commerce emphasizes it has done here by constructing a value using the FOPs placed on the record by Vinh Hoan.  Second Remand Results at 11.  Commerce explains that, because there were no reasonable established surrogate values available, constructing

a value using the respondent's own FOP data is preferable in this case as it will result in

a more accurate value for the fish oil byproduct.  See id. at 11–14.  Commerce states:

> The record of this review contained additional information beyond the
> sources proffered by the interested parties concerning fish oil, specifically,
> all of the FOPs consumed by Vinh Hoan to produce fish oil. Because this
> additional information was on the record, we were able to evaluate whether
> this information could credibly be used to value fish oil.  We reiterate that
> we have calculated [surrogate values] using record information in other
> cases where the record contains the requisite information to do so, and the
> record calculated [surrogate value] information represented the best
> available information.

Id. at 11.  On this record, Commerce's decision is reasonable.

Commerce explains that a constructed value would achieve a more accurate

surrogate value than the existing values from sources placed on the record.  Second

Remand Results at 13–14.  There were six potential surrogate values placed on the

record in this administrative review: five price quotes for fish oil from five different

companies and the GTA import data for Indonesian HTS category 1504.20.9000.  Id. at

3.  Among the five price quotes, two were from Indonesian companies, two were from

Indian companies, and one was from a Bangladeshi company.  Id.  On second remand,

Commerce reexamined each of the values to determine whether any would satisfy the

standard selection criteria and accordingly be a reasonable surrogate value.  See id. at

4–11.  Commerce concluded that none of the five price quotes satisfied more than two of

the selection criteria, and that none were reliable values.  See id. at 4–9.

Regarding the HTS data, Commerce determined that, while satisfying the other

four criteria, the data was not specific to Vinh Hoan's unrefined fish oil because HTS

category 1504.20.9000 covers both refined and unrefined fish oil, such that the value of

the import data is not representative of Vinh Hoan's fish oil.  Second Remand Results at

9–10.  Commerce determined that the data within HTS 1504.20.9000 is not "sufficiently

similar to the fish oil by-product produced by Vinh Hoan," id. at 9, because that HTS

category covers "unrefined fish oil that is packaged and containerized for international

shipment, as well as high value refined fish oil containing Omega-3 fatty acids," in addition

to unrefined, unpackaged fish oil such as Vinh Hoan's. Id. at 9–10.  Commerce explained

that this lack of specificity of the HTS import data is concerning and significant on these

facts, where the import data value is high relative to the main input, whole, live fish.  Id.

at 10.  Given the price disparity between the HTS data and the main input, Commerce

determined that the HTS data is more representative of refined than unrefined fish oil.[2]

See id. at 10–11, 16–17.  Thus, Commerce concluded that the import data for HTS

---

[2] Commerce also emphasized that the surrogate value derived from the Indonesian HTS 1504.20.9000 data would exceed the value of the main input and of the subject merchandise, which would be an unreasonable result for this byproduct.  Second Remand Results at 10–11.  In response, Plaintiff argues that, in this case, it is not unreasonable for the HTS value to exceed the value of the main input (whole, live fish) because more fish are required to make one kilogram of fish oil than one kilogram of fish.  See Pl.'s Second Remand Comments at 17–18.  As an initial matter, Defendant contends that this argument was not exhausted before the agency.  Def.'s Second Remand Comments at 17.  Plaintiff responds that it has consistently argued in these proceedings that there is not a rational connection between the value of a live fish and the byproduct it is producing.  See Oral Arg. at 00:13:51–00:18:25, Apr. 11, 2018, ECF No. 198.  Nevertheless, Plaintiff's argument is unpersuasive.  Plaintiff argues that "the fish oil value that will actually be used for purposes of deducting the by-product offset is not higher than the value of the main input," because the correct inquiry is not the value of the byproduct but "the value applicable to the amount of fish oil obtained from the FOPs used to obtain 1 kg of the subject merchandise, which will only be a fraction of $3.10/kg."  Pl.'s Second Remand Comments at 18.  Even accepting Plaintiff's argument as correct, the argument by itself does not undermine Commerce's justification for rejecting the HTS import data as unrepresentative and overbroad in light of the fact that Vinh Hoan's byproduct is low value, minimally processed, unpackaged, unrefined fish oil.  Commerce did not determine that the value was inappropriate simply because its value was greater than the main input; instead, Commerce found the data inappropriate because of the high value in combination with the fact that the heading contained refined fish oil where Vinh Hoan's fish oil is unrefined.  On these facts, Plaintiff has not demonstrated that Commerce's determination to use the constructed FOP value is unreasonable.

1504.20.9000 is "overly broad and not specific to the low value, unrefined fish oil produced by Vinh Hoan[.]" Id. at 10.

The record supports Commerce's determination.  Commerce explained that Vinh Hoan's "low value, unrefined fish oil" is "physically dissimilar to many of the products covered" by the heading, and that the value derived from the heading would exceed the value of the main input and of the subject merchandise.  Second Remand Results at 9–10.  Record evidence indicates that Vinh Hoan's byproduct is unrefined fish oil.  See id. at 9 (citing Commerce Mem. re: Verification of the Sales and [FOP] Response of Vinh Hoan Corporation, PD 393, bar code 3110870-01 (Dec. 14, 2010), Consol. Court No. 13-00156).[3]  Commerce concluded that, because Vinh Hoan's fish oil is unrefined and of lower value, the Indonesian HTS 1504.20.9000 data would constitute an unrepresentative surrogate value.  Id. at 10–11, 13–14.  It is reasonable for Commerce to determine that, on this record, the surrogate value that results from the use of data from HTS category 1504.20.9000 is not representative of the value of Vinh Hoan's byproduct because many of the products covered by that category are not sufficiently similar to Vinh Hoan's unrefined fish oil.  The agency therefore constructed a value using Vinh Hoan's own reported FOP data, which it considered would result in a more accurate value.  Id. at 13–14.  On this record, Commerce's determination is reasonable.

Commerce has explained why it deviated from its usual practice and constructed a value using Vinh Hoan's FOP data in this review, and the method used by the agency

---

[3] This document is filed on the administrative record of Vinh Hoan Corporation v. United States, Consol. Court No. 15-00156.  See Admin. Record, June 19, 2013, ECF No. 27, Consol. Court No. 13-00156.

to construct a value in this case is reasonable.  Commerce used the respondent's own reported FOP data to build up a price that reflects the value of that respondent's fish oil byproduct.  Second Remand Results at 11–14.  These FOPs were provided by the respondent and verified by the Department.  Id. at 13.

Plaintiff contends that Vinh Hoan's unrefined fish oil is a "value-added product," such that a surrogate value (here, the HTS import data) that exceeds the value of the main input is not an unreasonable category with which to value the byproduct.  Pl.'s Second Remand Comments at 18–23.  Defendant contends that, despite this minimal further processing, it would be unreasonable for the value of the fish oil to exceed that of the main input.  Def.'s Second Remand Comments at 16–17.  Whether the product is value-added does not undermine Commerce's reasonable determination that the HTS value covering "unrefined fish oil that is packaged and containerized for international shipment, as well as high value refined fish oil containing Omega-3 fatty acids," in addition to unrefined, unpackaged fish oil such as Vinh Hoan's, is not specific to Vinh Hoan's fish oil.  Second Remand Results at 9–10.

Finally, Plaintiff argues that Commerce's determination on second remand that Indonesian import data for HTS category 1504.20.9000 is not specific to Vinh Hoan's fish oil byproduct is not supported by the agency record because it is inconsistent with the agency's prior determinations in these proceedings that the HTS import data was specific.  See Pl.'s Second Remand Comments at 4–5, 14–16.  Commerce explained in the second remand that it in fact had expressed concern early on in the proceedings regarding the specificity of the HTS import data: "In the [final determination], while we found the

Indonesia HTS to be contemporaneous, we also found it to be not sufficiently similar to the fish oil by-product produced by Vinh Hoan." <u>Second Remand Results</u> at 9; <u>see id.</u> at 16–17 (noting that, in the final determination, "the Department found that HTS 1504.20.90.00 is reflective of refined fish oil prices." (citing Final Decision Memo at 76–86)). While the second remand may have been the first time that the agency explicitly stated that the HTS import data was not specific to Vinh Hoan's unrefined fish oil, throughout these proceedings Commerce consistently expressed concern that the HTS data was overly broad, which was the reason that the agency decided to "cap" the import value at a value more representative of unrefined fish oil. <u>See</u> Final Decision Memo at 82–84. Indeed, in the final determination, Commerce stated that

> the Department finds that the value derived from the Indonesian GTA import data under HTS 1504.20.90.00 is unrepresentative of Vinh Hoan's "unrefined" fish oil because this value likely reflects "refined" fish oil prices.
> Nevertheless, the Department will continue to value fish oil using the Indonesian GTA import data under HTS 1504.20.9000 because it is the most specific of the available Indonesian HTS categories on the record and, by its terms, encompasses "unrefined" fish oil. Moreover, the GTA data is contemporaneous with the POR. And, as stated above, the Department previously found GTA data to be publicly available, free of taxes and duties, and representative of broad market averages. However, because of the concerns articulated [by Commerce with respect to representative value], the Department will "cap" the price of HTS 1504.20.9000 at the calculated CV of the FOPs and ratios used by Vinh Hoan to make fish oil, <u>i.e.</u>, fish waste, labor and energy, plus surrogate ratios, to ensure that it is a fully-loaded fish oil value.

<u>Id.</u> at 83 (citations omitted). This passage clearly reflects a concern about the specificity of the data, which formed the basis for Commerce's decision to calculate a value more representative of the value of the respondent's fish oil byproduct. Accordingly, Plaintiff's

argument that Commerce's determination on second remand that the HTS import data is not specific is inconsistent with prior findings on the record is unpersuasive.

## CONCLUSION

For the foregoing reasons, the <u>Second Remand Results</u> in Commerce's ninth antidumping duty administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam comply with the court's order in <u>An Giang II</u>, 41 CIT at __, 236 F. Supp. 3d at 1361, are supported by substantial evidence, and are in accordance with law. Therefore, the <u>Second Remand Results</u> are sustained.  Judgment will enter accordingly.


          /s/ Claire R. Kelly

         Claire R. Kelly, Judge


Dated: May 24, 2018
      New York, New York